UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MISTY L.E. CLINE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant.[1] | NO. C16-5722-JPD<br><br>ORDER AFFIRMING THE COMMISSIONER |

Plaintiff Misty L.E. Cline appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

I.　　　FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a thirty-five year old woman with a college education. Administrative Record ("AR") at 27, 41. Her past work experience

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER - 1

includes employment as a sales clerk, loss prevention/store detective, customer sales clerk, and receptionist. 42-46, 56. Plaintiff was last gainfully employed in April 2012. AR at 42.

On July 4, 2013, plaintiff filed an application for DIB, alleging an onset date of May 1, 2011. AR at 13. The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 13, 63-72, 74-84. Plaintiff requested a hearing, which took place on February 3, 2015. AR at 34-61. During the hearing, plaintiff amended her alleged onset date to May 1, 2012. AR at 37. Plaintiff asserts that she is disabled due to fibromyalgia, obesity, asthma, status post left knee surgery with chondromalacia of the patella, depression, and headaches/migraines. AR at 15-16.

On May 12, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 10-28. The Appeals Council denied plaintiff's request for review, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On August 22, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Cline bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments

are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On May 12, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since May 1, 2012, the alleged onset date.

3. The claimant has the following severe impairments: obesity, asthma, fibromyalgia, status post left knee surgery with chondromalacia of the patella, and depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work, which is defined in 20 CFR 404.1567(b) as work involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to 10 pounds, even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  The claimant can occasionally climb ramps and stairs.  She can have work that does not require climbing

ORDER - 5

ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch, crawl, or kneel. The claimant can perform simple routine tasks. She can have occasional public contact. She should avoid concentrated exposure to extreme cold, vibration, fumes, gases, dust, odors, and hazards.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1979 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2012, through the date of this decision.

AR at 15-28.

## VI.    ISSUE ON APPEAL

The sole issue on appeal is:

1. Did the ALJ err by rejecting the opinion of plaintiff's treating physician, Jamie Gerber, M.D.?

Dkt. 11 at 1; Dkt. 12 at 1.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

VII.   DISCUSSION

A.   <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

*1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

        2.        Jamie Gerber, M.D.

Dr. Gerber has been plaintiff's treating primary care physician since June 2012, when she began treating plaintiff for conditions unrelated to her disability. AR at 470 (treatment note for heartburn and a dermatological issue). However, in October 2013 plaintiff reported increasing pain in her back, knees, and neck in the last two months. AR at 530. She reported that her pain "depends on the day the pain moves around and the weather is killing me." AR at 530. With respect to her knee pain, she reported that it felt like "someone is screwing a screw into her knee" and "when she walks it feels like her knee caps are shattering." AR at 530. She also reported occasional muscle spasms in her mid-back and neck. AR at 531. Dr. Gerber noted that plaintiff has gained 26 pounds since January, and she does her "daily routine: shopping getting the mail but no set physical activity." AR at 531. However, plaintiff's physical examination was normal. AR at 532. Dr. Gerber assessed chondromalacia of patella, arthritis of the knee, but noted her "primary encounter diagnosis" was "morbid obesity." AR at

532-33. Dr. Gerber prescribed Vicodin as needed for pain, and referred plaintiff to physical therapy. AR at 532.

In December 2013, plaintiff reported worsening back, knee, and neck pain, and new head, arm, leg, and hand pain. AR at 523. She reported worse pain in her lower back, and more mid-back muscle spasms. AR at 524. Plaintiff reported that she had not attended physical therapy due to "transportation issues." AR at 524. Plaintiff reported the pain, on a scale of one to ten, was five on average with a maximum of eight due to "spikes" in pain. AR at 524. Dr. Gerber did not perform a physical examination on this visit. AR at 525.

In February 2014, plaintiff reported continuing pain and wanted to discuss fibromyalgia. AR at 581. She reported that she had done some research and believed she was tender in the sites that were noted on a website discussing fibromyalgia, and was also having trouble sleeping, staying asleep, and was experiencing overall body stiffness, low energy, and headaches. AR at 582. Dr. Gerber performed a tender point exam, and found that "all tender points except on the breast bone bilaterally are tender." AR at 583. As a result, Dr. Gerber found that plaintiff "does meet the criteria" and diagnosed fibromyalgia. AR at 584.

In May 2014, plaintiff reported continued pain complaints even on her Gabapentin medication, which did not help on her "bad days." AR at 576. Plaintiff stated she "would like to get Vicodin in hands as needed." AR at 578. Dr. Gerber did not conduct a physical examination on this visit. AR at 578. Plaintiff reported that she has symptoms of anxiety and depression, and has days she does not want to do anything. AR at 577. Plaintiff reported she "has not worked in about 3 years. Applying for disability and needs paperwork filled out today for lawyer." AR at 577.

On May 15, 2014, Dr. Gerber completed a medical source statement. AR at 552-53. In response to written questions by plaintiff's lawyer, Dr. Gerber opined that plaintiff has chronic

ORDER - 9

pain in the low back, knees, and neck, and diagnoses of fibromyalgia and depression. AR at 552. Dr. Gerber wrote, "Due to this, she cannot sit or stand for prolonged periods (cannot sit for more than 15-30 minutes at a time." AR at 552. Dr. Gerber then circled that she "agree[d]" with the statement that since taking Gabapentin, plaintiff has two or three "bad days" every two weeks but on those days, her pain can reach a "10" and she cannot take care of her own needs and must focus on getting comfortable and sleeping due to pain and fatigue. AR at 553. She further opined that plaintiff's depression contributes to fatigue and inability to focus or maintain concentration and persistence, and that in addition to customary work breaks, plaintiff would require unscheduled breaks of fifteen minutes or more. AR at 553. Dr. Gerber indicated that plaintiff's "clinically demonstrated impairments/diagnoses" that could be expected to produce these symptoms included her fibromyalgia, morbid obesity, depression with anxiety, and that her complaints are reasonable/credible in light of her diagnoses. AR at 553. Finally, Dr. Gerber opined that plaintiff would be absent from even sedentary work three or more days per month. AR at 553.[4]

Plaintiff's last visit with Dr. Gerber prior to the administrative hearing was on December 11, 2014, when plaintiff continued to complain of knee, low back, and neck pain. AR at 559. She reported that she bent down earlier that morning and hurt her back, and although Zoloft was helping her depression she was still having down days and experiencing pain in multiple sites over her body. AR at 559-60. She did report that taking 200mg of Gabapentin three times daily was better for her, "definitely a difference," although she experiences some fatigue during the day. AR at 559. Dr. Gerber performed a physical

---

[4] Plaintiff visited Dr. Gerber on July 28, 2014 due to sinus problems and ear pain, AR at 569, and was not seen again for several months, until September 22, 2014 for a Vicodin refill. AR at 564.

ORDER - 10

examination which revealed "mild paraspinal lumbar and thoracic spasms on the right," no spinal tenderness, normal range of motion, and pain with extension and lateral flexion. AR at 561.

The next month, in January 2015, Dr. Gerber updated her previous May 15, 2014 medical source statement by stating that "Misty's pain frequency of flares can vary with time of year and weather. In cold weather, pain days can be 4-6 times per 2 wks. In warmer weather, it can decrease to 2-3 times per 2 weeks. Otherwise, no significant change in above statement." AR at 608.

The ALJ considered Dr. Gerber's May 15, 2014 opinion and January 15, 2015 addendum, but ultimately gave them "very little weight" because "Dr. Gerber placed too much reliance on the claimant's less than credible complaints. As discussed throughout this decision, the claimant is not an entirely credible source. Dr. Gerber did not examine the claimant when giving her initial opinion, and appears to have instead relied on the claimant's allegations in the form of a letter prepared by the claimant's representative." AR at 26. By contrast, the ALJ pointed out that when examining consultative physician Dr. Gaffield provided his opinion, he had performed a detailed examination of plaintiff, reviewed treatment notes, and reviewed medical imaging, and his opinion was largely consistent with that of non-examining physician Dr. Thuline. AR at 26.[5] As discussed below, the ALJ's reasons for rejecting Dr. Gerberg's opinions were specific, legitimate, and supported by substantial evidence in the record. The ALJ also did not err by affording more weight to the opinion of

---

[5] The ALJ adopted Dr. Thuline's opinion only in part because she rejected his opinion that plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently. AR at 25. Instead, the ALJ adopted Dr. Gaffield's opinion that plaintiff could lift no more than twenty pounds occasionally and ten pounds frequently due to her obesity and back and shoulder conditions, as Dr. Gaffield was an examining source and Dr. Thuline was not. AR at 25.

ORDER - 11

examining physician Dr. Gaffield, who opined that plaintiff could perform light work despite her impairments.

First, the ALJ pointed out that Dr. Gerber's opinion that plaintiff could not stand or sit for more than 15 to 30 minutes at a time was more limiting than even some of plaintiff's own reports to providers. Specifically, the ALJ noted that this opinion conflicted with plaintiff's report to Dr. Gaffield only a few months earlier that she could sit for an hour before moving around. AR at 25, 512. The ALJ also noted that this opinion conflicted with Dr. Gaffield's findings on physical examination, as Dr. Gaffield "did not observe this extreme degree of dysfunction." AR at 25, 514-16. Second, the ALJ noted that "Dr. Gerber is not actually a witness to any of [the] allegations" in the report regarding the severity of plaintiff's "bad days" every two weeks, such as plaintiff's statement that on bad days she could not take care of basic needs such as getting dressed and spends the whole day sleeping. AR at 25. The ALJ found that "the claimant's allegations do not become credible simply because Dr. Gerber agrees that the claimant does these things at home." AR at 25. Moreover, the ALJ noted that plaintiff's reported functional limitations were "inconsistent with many of the earlier treatment records," where plaintiff was treated for ear pain, a cough, and managing her obesity, but "did not describe debilitating pain that precluded her from handling even basic care for entire days." AR at 25.

The Court finds that, especially when Dr. Gerber's May 15, 2014 opinion is compared with her treatment notes, the ALJ could reasonably conclude that Dr. Gerber failed to adequately explain and support her opinions regarding plaintiff's physical limitations, and was therefore presumably relying heavily on the claimant's statements regarding her limitations in standing, walking, and self-care, rather than Dr. Gerber's own clinical findings on examination. This was a specific and legitimate reason for the ALJ to reject Dr. Gerber's

opinion, because the ALJ declined to adopt plaintiff's testimony and plaintiff does not assign error to this aspect the ALJ's decision.  As noted above, Dr. Gerber often did not conduct physical examinations of plaintiff during her appointments, and even when Dr. Gerber did examine plaintiff, plaintiff's physical examinations often showed only "mild" or "normal" results.  The ALJ could also reasonably conclude that if plaintiff was unable to manage her personal care for days due to her pain symptoms, she likely would have reported her struggles during one of plaintiff's earlier visits with Dr. Gerber.  AR at 25.

With respect to Dr. Gerber's opinion that depression and fatigue made plaintiff unable to focus her attention or maintain concentration or task persistence, the ALJ found that "Dr. Gerber deferred on performing an examination of the claimant on the date that she filled out this form.  Dr. Gerber does not adequately explain the basis for this opinion."  AR at 25.  Moreover, the ALJ found this conclusion inconsistent with other record evidence, such as the fact that plaintiff "reported improvement in her mental functioning with Zoloft within 12 months.  The claimant did not seek mental counseling.  The claimant was also taking college level courses in photography."  AR at 25.  As a result, the ALJ found that "Dr. Gerber's finding is inconsistent with the treatment records and the claimant's activities."  AR at 25.  The ALJ did not err in reaching this conclusion, as inconsistency with the treatment records and plaintiff's activities are specific and legitimate reasons to reject a physician's opinions.

Finally, with respect to Dr. Gerber's January 15, 2015 addendum, the ALJ noted that Dr. Gerber had examined plaintiff "only weeks prior to giving this addendum," and "it was in that visit that the claimant reported improvement with Zoloft and she also reported that she had only used pain medication once in the preceding month."  AR at 26.  Thus, the ALJ found that Dr. Gerber failed to provide an explanation as to the basis of her opinion, which appeared inconsistent with her own treatment notes.  The ALJ noted that when Dr. Gerber examined

plaintiff "at that earlier visit . . . her observations do not show the extreme degree of limitation that she continued to find." AR at 26. Accordingly, the ALJ found that Dr. Gerber "placed too much reliance on the claimant's less than credible complaints," and gave Dr. Gerberg's opinions "little weight." AR at 26.

Contrary to plaintiff's contention, this is not a case where the ALJ erred by rejecting a doctor's opinion by questioning the credibility of plaintiff's complaints where the doctor did not discredit those complaints and supported her ultimate opinion with her own observations. Dkt. 11 at 8 (citing *Ryan v. Commissioner*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). Here, plaintiff has not challenged the ALJ's rejection of plaintiff's testimony. Although it is true that Dr. Gerber did not question the credibility of plaintiff's complaints, she also did not adequately explain the basis of her opinions. The ALJ could reasonably conclude that Dr. Gerber's opinions were contradicted by other medical evidence of record, Dr. Gerber's own treatment notes including her mild or normal physical examination results, plaintiff's own reports to other providers, and plaintiff's daily activities. Accordingly, the Court finds that the ALJ gave several specific, legitimate reasons, supported by substantial evidence, for rejecting Dr. Gerber's opinions.

## VIII.   CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational

//

interpretation.  For the foregoing reasons, the Commissioner's decision is AFFIRMED.

DATED this 5th day of April, 2017.

_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

ORDER - 15